[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 25-11129

Non-Argument Calendar

————————————————

In re: SRQ TAXI MANAGEMENT, LLC,

Debtor.

_____

TRAZIUS AVRISSAINT,
GERALD CHERY,
EDDY CHARLES,
CLIVE LLOYD BUCKLEY,
BILLY NELSON, et al.,

Plaintiffs-Appellants,

*versus*

SARASOTA MANATEE AIRPORT AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-01729-SDM,
Bkcy No. 8:17-bk-7782-CED

_____

Before BRANCH, ANDERSON, and WILSON, Circuit Judges.

PER CURIAM:

This is an appeal from an adversary proceeding during bankruptcy proceedings of SRQ Taxi Management, LLC (SRQ Taxi). In that proceeding, SRQ Taxi and twenty-two taxi drivers sued the Sarasota Manatee Airport Authority (SMAA) for breach of contract.[1] The bankruptcy judge found that the SMAA breached its contract with SRQ Taxi, but that SRQ Taxi failed to prove damages. The bankruptcy court also found that the drivers lacked standing to enforce the contract.

After the district court affirmed the bankruptcy court's decision, the drivers appealed to this court, arguing that they have standing to sue as intended thirty-party beneficiaries of SMAA's

_____

[1] The SMAA cross-appealed, arguing that the bankruptcy court erred in finding that the SMAA breached the contract. As we dismissed the SMAA's cross-appeal for lack of jurisdiction, this opinion only addresses the drivers' appeal.

contract with SRQ Taxi. After careful review, we find no error with the district court's and the bankruptcy court's determinations that the drivers lack standing. Thus, we affirm.

## I.    Factual Background

Starting in 1982, Diplomat Taxi contracted with the SMAA to operate a taxi service at Sarasota-Bradenton International Airport. In 2009, the SMAA and Diplomat Taxi entered their most recent agreement for a term of five years with options for renewal. The agreement provides Diplomat Taxi with "the non-exclusive right to conduct a combination metered taxicab and non-metered limousine operation for the purpose of transporting airline passengers and baggage from the Terminal." Diplomat Taxi would "furnish and operate at all times sufficient and suitable taxicabs and limousines to maintain adequate service required by Airport patrons." In exchange, Diplomat Taxi agreed to pay six cents per deplaning passenger, comply with ground transportation rules, and meet all reasonable demands for taxicabs or limousine services at the airport.

This agreement worked for several years. But in 2015, Uber and other transportation network companies (TNCs) began operating at the airport without an agreement or permit from the SMAA. Later that year, the SMAA contracted with Uber to allow Uber pickups from the short-term parking lot directly in front of the airport's main terminal, first through the end of 2015 and later through 2016. Uber agreed to pay SMAA $2.50 for each pickup.

In 2016, Diplomat Taxi assigned its contract to SRQ Taxi. During that year, SMAA gave TNCs, including Uber, reserved parking spaces in the short-term parking lot for free and added signs directing passengers to the TNCs pickup areas.

In 2017, SRQ Taxi filed for Chapter 11 bankruptcy.[2]  In January 2018, SRQ Taxi and its drivers instituted an adversary proceeding and sued the SMAA for breach of contract.  The parties agreed to a bifurcated trial.  After a trial on liability, the bankruptcy court found that SRQ Taxi had the "exclusive right to provide on-demand, for-hire transportation," and that the SMAA violated that exclusive right.  As a result, the SMAA was liable to SRQ Taxi for breach of contract and breach of the implied covenant of good faith and fair dealing.  But the bankruptcy court also found that the drivers were not intended third-party beneficiaries and were not entitled to enforce the agreement.

At the damages trial, the SMAA moved to exclude SRQ Taxi's expert witness.  The bankruptcy court granted the motion after the trial, finding that SRQ Taxi's expert witness's testimony was not based on sufficient facts or data.  Because the testimony was inadmissible, SRQ Taxi could not establish the requirements for damages, and the bankruptcy court entered final judgment for the SMAA.

---

[2] As a result of the SMAA's agreement with Uber and other TNCs, SRQ Taxi saw a significant drop in pickups, from about 75% of passengers to less than 30% while Uber saw and increase in pickups, from 27% to 62%.

The drivers appealed to the district court, arguing that they are intended third-party beneficiaries under the agreement. The district court agreed with the bankruptcy court that the drivers were not third-party beneficiaries and lacked standing. The drivers timely appealed.

## II.    Standard of Review

"When we review an order of a district court entered in its role as an appellate court reviewing a bankruptcy court's decision, we independently examine the bankruptcy court's factual and legal determinations, applying the same standards of review as the district court." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1135 (11th Cir. 2018). "We review *de novo* conclusions of law whether by the bankruptcy court or the district court." *Id.* "We review the bankruptcy court's factual findings under the clearly erroneous standard." *Id.*

## III.    Analysis

The drivers argue that they are intended third-party beneficiary of the agreement between SRQ and SMAA and thus have standing. Under Florida law, a cause of action for breach of third-party beneficiary contract requires: "(1) a contract; (2) an intent that the contract primarily or directly benefit the third party; (3) breach of the contract; and (4) resulting damages to the third party." *Hollywood Lakes Country Club, Inc. v. Cmty. Ass'n Servs.*, 770 So. 2d 716, 719 (Fla. Dist. Ct. App. 2000). "[I]n order to find the requisite intent, it must be shown that *both* contracting parties intended to benefit the third party. It is insufficient to show that only one party unilaterally intended to benefit the third party." *Caretta*

*Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. Dist. Ct. App. 1994).

Here, none of the evidence suggests that *both* SRQ Taxi and the SMAA intended for the agreement to benefit the drivers. SRQ Taxi provided testimony from Diplomat Taxi's owner that the agreement was for the benefit of the drivers, the company, the SMAA customers, and the SMAA. But there is no evidence that the SMAA intended for the agreement to benefit the drivers. Instead, the agreement's recitals only state that the SMAA "wishes to assure that safe, high quality and efficient metered taxicab and non-metered limousine . . . service is available at the [SMAA] to meet all arriving flights for the benefit and convenience of the traveling public." Because there is no clear evidence that both parties intended to benefit the drivers, the drivers may not sue for breach of the contract as third-party beneficiaries.[3]

## IV.    Conclusion

Because we find no error with the district court's and the bankruptcy court's determinations that the drivers lack standing, we affirm.

---

[3] The drivers attempt to skirt this intent requirement by arguing that the SMAA indirectly contracted with the drivers through the agreement. But while Florida law does allow pre- and post-contract actions to help establish intent, *see Goodell v. K.T. Enters., Ltd.*, 394 So. 2d 1087, 1088–89 (Fla. Dist. Ct. App. 1981) (per curiam), the drivers do not have any evidence of pre-contract actions showing the drivers participated in pre-contract discussions or that the SMAA was trying to work around contracting with the drivers themselves.

25-11129                Opinion of the Court                7

**AFFIRMED.**